24446

In the Matter of Stephen E. LEHMAN, Respondent.

(472 S.E. (2d) 234)

Supreme Court

*Attorney General Charles Molony Condon* and *Assistant Deputy Attorney General J. Emory Smith, Jr.*, Columbia, *for complainant.*

*H. Carlisle Bean,* Spartanburg, *for respondent.*

Submitted May 1, 1996.

Decided June 10, 1996.

*Per Curiam:*

In this attorney grievance matter, respondent admits that he has committed ethical violations and consents to disbarment pursuant to Paragraph 27 of the Rule on Disciplinary Procedure, Rule 413, SCACR. We accept respondent's admission and disbar him.

## The Few Matter

Respondent was retained to be the escrow agent relative to a settlement. He was to receive a fee of $500.00 for receiving and disbursing $178,673. Respondent admits that he jailed to pay $78,744 to Mr. Few and $7,462 to a client of Mr. Poliakoff because his personal use of trust account funds created a shortage in the account. Mr. Few commenced legal action against respondent and subsequently obtained a confession of judgment. As a result of a settlement, this judgment was satisfied by respondent's payment of $60,000 to Mr. Few. The money owed to the client of Mr. Poliakoff has not been paid.

## The Redd Matter

Mr. Redd retained respondent to represent him in a tax matter. Respondent admits that he received a check from Mr. Redd in the amount of $65,000 which he immediately converted for purposes other than that for which they were intended. Seventeen months later, respondent gave Mr. Redd a cashiers check in the amount of $67,447.

## The Clary Matter

Jody Clary and Traci Clary, sisters, retained respondent to represent their interest in their deceased mother's estate. Mr. Clary, the decedent's spouse, gave respondent a check for $76,000 for the purchase of land from the estate, with the proceeds to be divided between the sisters. Respondent admits that he did not deposit the check into the trust account, but instead purchased two cashier's checks, one for $46,851 that was deposited in the trust account, and another for $29,149 that was used to pay a portion of another client's account that respondent had improperly handled.

### The Perry Matter

Mr. and Ms. Perry retained respondent to represent them in a real estate transaction. Respondent received a check for $193,470 that he deposited in his trust account to be held until the Perrys located property to purchase. Respondent admits he converted the funds for personal use, causing the trust account to have a negative balance of $617 at one point. As a result of respondent's actions, Ms. Perry was required to acquire a credit line loan of $100,000 by using her home as collateral to pay for the first piece of property the Perrys decided to purchase. Further, the Perrys were unable to close on a second piece of property because of the unavailability of funds in the trust account. Although respondent later used funds belonging to other clients to purchase and deliver to the Perrys a cashier's check in the amount of $100,000, an outstanding debt of over $93,000 remains owed to the Perrys.

### The Powell Matter

Respondent received funds relative to Mr. Powell and admits that he converted them to his own use. Respondent later used $40,000 of personal funds to cover checks written on behalf of and to Mr. Powell.

### The Diversified Services Matter

Respondent received a check from a client, Diversified Services, in the amount of $50,000. The check, in part, consisted of fees for services yet to be rendered. Respondent admits he converted these unearned fees to purposes other than that for which they were intended.

### Trust Account Violations

From 1992 through 1995, respondent admits to misappropriating trust account funds forty-nine times for a total of $170,150. In addition, respondent admits that twelve of the misappropriations involved his using trust account funds totalling $165,305 to repay personal loans. Further, respondent admits to commingling personal funds into the trust account on seven different occasions in an attempt to make up for fund shortages. Respondent also admits that there have been five checks written from the trust account during this time period that were not honored by the bank due to insufficient funds in the account.

## CONCLUSION

In our opinion, respondent's conduct warrants disbarment. Respondent has violated Rule 1.15 of the Rules of Professional Conduct, Rule 407, SCACR, by failing to safeguard and preserve the identity of client funds. Respondent has also violated Rule 8.4 by engaging in conduct involving dishonesty, fraud, deceit, and misrepresentation, and by engaging in conduct that is prejudicial to the administration of justice. It is therefore ordered that respondent shall be disbarred from the practice of law in this State. Disbarment shall be retroactive to August 4, 1995, the date on which respondent was temporarily suspended from the practice of law by Order of this Court.

In addition to the requirements of Paragraph 37 and 38, Rule 413, SCACR, no petition for reinstatement shall be accepted until respondent has filed proof that he has made full restitution to all institutions and individuals who have lost money as a result of his fraudulent acts or mishandling of trust funds, to include restitution to the Lawyer's Fund for Client Protection for any payment it may make. Within fifteen (15) days of the date of this opinion, respondent shall return his certificate of admission to practice law and file an affidavit with the Clerk of Court showing that he has complied with Paragraph 30 of Rule 413, SCACR.

Disbarred.

BURNETT, J., not participating.